Good morning. May it please the Court, Howard Hong on behalf of the Appellant Plaintiff, Mr. Paolo Gallardi. Mr. Gallardi immigrated to this country in early 1991. Shortly thereafter, he voluntarily enlisted in the United States Navy at the age of approximately 34 years of age. About half a year after his entry on active duty, he injured his back and was in pain for two years almost constantly. He endeavored to ask for a separation on medical grounds, but his doctor in the military told him, well, you're not that injured, you're not going to get it, so don't bother asking for it. The pain got so bad that six months before his active duty term was to be completed, he asked for a discharge to be separated on the grounds of being an alien. In Section 315 of the Immigration and National — The President of the Philippine Republic, correct? That's correct, Your Honor, a Filipino citizen. Section 315 bars the naturalization of persons discharged — well, I shouldn't say persons — of an alien discharge on account of being an alien. However, the term alien used in this context has been interpreted by judicial decisions and the agency interpretations themselves as being restricted to aliens who are non-permanent residents. So although the phrase seems to be broad, the only aliens allowed to claim that discharge from military service are non-permanent residents. What's your best case that holds that that's the determined — that's the definition of that term? Well, in HCFR 315.2 — Say that again. Well, HCFR 315.2 under the exemptions from ineligibility, in 1990 when Congress enacted administrative naturalization, the agency codified, if you would, all the alienage cases, the exceptions and grounds of ineligibility into that particular section. There are many cases. And the agency interpretations and the operations instructions go through a whole litany of cases that discuss the obligation to military service. So our basic premise is if there was no statutory liability to military service, then Mr. Garlotti could not be saddled with the burden of having been discharged on grounds of ineligibility. You want to restrict the definition of liability. You want to restrict it so it doesn't cover this individual you're representing. Is that correct? That's correct, Your Honor. You want him to qualify for citizenship. That's correct, Your Honor. And what's the basis for that on the basis that liability only includes, say, draft liability and not liability that you're obligated to serve under a contract? Yes, sir. The judicial decisions are off-premise on statutory liability. And if I could refer to McGrath v. Christensen, 340 U.S. 162, I believe I mentioned that. You know what bothers me about that position, though? If your position is correct, then any alien who volunteers and gets in the military service would have the right, because of being an alien, to get out of service at any time without fulfilling the contractual duty. And I think that would be inimical to the interests of the government and to the interests of the military service. I agree with that, Your Honor, and that's exactly why the Military Selective Service and Training Act does not allow permanent residents to be discharged on the ground of alienation. He should not have been granted a discharge on that basis. His commanding officer authorized it improperly, erroneously, and therefore is null and void and cannot be now used against him. If he was a nonpermanent resident, that would be a different story. But if he were a nonpermanent resident and he volunteered for the Navy and was in for two weeks and then claimed alienage to get out, under your theory, he would be entitled to citizenship. No, Your Honor. Section 329 of the Immigration and Nationality Act specifically prohibits a nonpermanent resident alien who serves honorably and gets out on alienage grounds, specific statutory bar against naturalization for those individuals, nonpermanent residents. Kennedy, what you're saying is that a permanent resident, such as Mr. Gagliardi was, should not have been granted his release from the Navy on the grounds of alienage. That's correct. He shouldn't have. And your basis for saying that? The interpretations of the Immigration Service references the expiration of the obligation to serve on Section 315.3c.2, referencing that since September 28, 1971, the exemption treaties alone made provision for exemption on account of alienage and only a permanent resident alien of a treated country remained eligible for such benefit thereunder. So in other words, we have different classes of aliens, nonpermanent residents, they may ask for a discharge on alienage grounds. Let me try to follow your argument. So you're saying he should not have been granted a discharge. That's correct. But he was. That's correct. And he took advantage of it. So he was discharged. So shouldn't we be concerned with the fact of discharge and, you know, not whether it was proper? In other words, it seems to me your client would be stopped from raising that point because he took advantage of it. Well, Your Honor, I don't think that the analogy is consistent with prior cases. All the existing cases that we have dealt with, the draft during the Vietnam War, during World War II, during the Korean conflict, during time of armed conflict. Mr. Ghilardi served in time of peace. The Persian Gulf War had just finished and he enlisted. We were in relative peace until recently. So the record is clear that he was not asking for separation because he did not love America. He voluntarily enlisted, saying, showing his support for this country. So I think the fact that he might have received a benefit, I don't believe the concept of estoppel really applies in this case because we should look at statutory obligation as opposed to a unilateral benefit that might have been conferred upon him because of that. And I think the record is not that clear that he was the one that really wanted to name the discharge. His deposition indicates clearly that he was concerned about his medical condition, wanted out on his medical condition, had several doctor's appointments. They were canceled at the Navy's behest and not his behest. And I think the telling part is if we look at these things. Well, just a minute. He knew he was being granted a discharge on account of alienage, right? He signed a piece of paper to that effect, didn't he? That's right, Your Honor. And he had been under extreme physical duress because of his bad back for about two years. He had barely six months to go on his enlistment. Yeah, well, we can't consider the bad back. I mean, this is just as though your client just wanted out because he was an alien. So the bad back, maybe that was unfortunate, but it's not part of this case as far as I can see. The other aspect that I was interested in, however, was the 18-month service in a NATO country. I know that's not your principal point, but there might be something there, and I want you to discuss it for a moment. Well, the clear regulatory language is 18 months honorable service in a country, which is a member of NATO, which is what the United States is. That's the language of what? Excuse me, sir? You said the clear language. Of ACFR 315.2B6. All right. That's the language of the regulation, right? Of the regulation, yes, Your Honor. And how does the government construe that regulation? Well, the government is trying to say that it has to be service in a foreign nation of NATO, but that's what we see in 6.3 where there's a specific reference to the armed forces of the US country. And isn't the government's interpretation of its own regulation entitled to some deference? It would be, but the clear language here allows for our construction of service in the NATO country, and the United States is a NATO country. Well, the government says that's a foreign country, but you're saying there's nothing in the regulations that excludes service in the American forces as being a part of NATO countries. That's your position? That's correct, Your Honor. So the government's position is just kind of ipso facto, if I can use some strange word from North Dakota. Yes, Your Honor. Thank you. Counsel, one last question. Isn't there a provision in 315 that directly addresses a penalty for aliens who seek discharge from the armed forces with respect to not being eligible for the speeded-up naturalization? Yes, Your Honor. What is that? That's Section 329. And by contract, by juxtaposition, Section 328, interestingly enough, does not have the similar bar. Section 329 allows for naturalization of persons who never had green cards, who never were permanent residents. But Section 328 does require permanent residency, and we don't see there a specific reference to the bar on alienage that we see under Section 329. So I think that, as Your Honor pointed out, that does make a distinction why it is okay to treat Mr. Ghilardi and other permanent residents differently. You would agree that Section 329, which removes the speeded-up procedure from aliens who leave the armed forces, applies equally to draft or volunteer enlistments? That's correct. If I could reserve 30 seconds of my time. We'll give you a minute for it. Thank you, Your Honor. Good morning, Your Honor. Sam Bettwee for the government. I think the problem here is that if there was a mistake made, it was with the Navy, and it's a Navy problem, and it has to be solved with military law, APA review, perhaps, of a denial by the Board of Correction of Naval Records. But this is not an immigration problem. Apparently, the problem is that Mr. Ghilardi is saying he got some bad advice on how to get out of the military, but that's, as Your Honor said, that's not the looking behind the motivation for seeking this exemption. So your idea was that he wants to get some relief, but he'd have to go to the military and see if they can reinstate him or do something to correct his status. Yes, Your Honor. In fact, that's why I say we've attempted that. I even wrote a letter recommending that that be done, that there be a correction of the records, and the board denied a correction of the records. I'm not privy to the record. Which board is that? The board for the correction of naval records. In other words, they didn't let him back in the Navy? I'm sorry, Your Honor? They didn't let him back in the Navy? Well, the petition was for correction of the record to show that the discharge should have been coded for medical bad back, not for a medical discharge, not for medical retirement, but for medical reasons instead of this other reason for alienage. So the board denied that, and the next step would be to seek judicial review, EPA review. Well, I thought this was the district court denied him his petition for naturalization. Yes, Your Honor. I'm talking about administrative exhaustion here, in effect. In other words, the real problem is, according to Mr. Gaiardi, is that the exemption, he was misled by somebody. Someone's got some bad advice on how to do it. He wants to be naturalized. The judge says you can't because of the statutory bar you got out of the service. Now, if we said, for example, well, he had 18 months in the service, and the United States is a NATO country. I'm not saying we're going to decide that. Wouldn't that be something that the judge could take into consideration if we still ruled and said that's the law? Well, there are a couple of problems with that. First of all, that regulation isn't so clear, and it's derived from the statute, which is more clear. I know that that may not be so, but if we should so decide that's the law, it isn't an administrative decision on the law. It's a court decision, and that would enable him to be naturalized, would it not? Yes, Your Honor. And I'll address that. I just wanted the Court to know what I think the real problem is in this case and where the exhaustion needs to lead. It seems to me the real problem as we face it now in this appeal is whether or not the district court correctly interpreted Section 315's citizenship bar, right? Yes, Your Honor. And what's the term, you know, liable or liability in that statute mean? Well, Your Honor, the answer I think is in the statute, which I cite in my brief. It's 50 Appendix U.S.C. Section 456, and that's where this 18-month rule came from, from the regulation. And it says more clearly that the services in the armed forces of a nation with which the United States is associated in mutual defense activities, and the regulation has interpreted that NATO is one of those, and that clearly doesn't mean the United States in the United States is one of those. So it's a 50-month claim, but it doesn't go to the question that Judge Tashima asked you, which is how should we interpret liability? Liability, I'm sorry. Should that be only the liability for, quote, military training and service, as that term has been used continually since the 1917 Draft Act, as opposed to enlistment, which goes to voluntary service? Well, Your Honor, the statute, I think we have to keep in mind that the statute refers to exemption or discharge. And all the cases that have been cited by appellant have dealt with exemptions. In other words, seeking the exemption before having gone into the service. But the statute also speaks, as I say, to discharge, early discharge. And this is an early discharge case. It doesn't matter how someone got into the military. Once they're in the military, everybody's obligated the same to serve. Well, that's the whole issue. If the term military training and service and liability for military training and service has acquired a historical and precise meaning to involuntary service, what we used to call, I think all of us remember quite well, some of the younger people don't, the draft. Now, there's quite a difference. I mean, whether you're exempted from the draft or whether you're discharged on alienage after entering the draft, those two terms go to the issue of liability. What was your liability for service? And that goes in turn to the term military training and service. So I take it you believe that military training and service covers both involuntary military training and service and enlistment military training and service. Well, I do, Your Honor. And I think that when Your Honor says historically, certainly most of the cases deal with the draft. But even today, we're aware of the fact that many people are trying to get out of their obligations. They voluntarily join, but when the rough gets going, it's going, it's rough. What's your best case that supports your interpretation of the 315? I'm sorry. My interpretation about, well, I think the best case is the statute. The statute is the one that makes it clear that we're not talking about the United States as a NATO country. I'm talking about what liability means in 315. And what's the best case that supports your interpretation that includes voluntary service as well as compulsory service? Well, Your Honor, I don't have a case. The statute, again, deals with discharges as well as exemptions. Which side do you think McGrath supports? I'm sorry? McGrath. What kind of interpretation do you think McGrath supports? McGrath was an exemption case. That was not an early discharge case. That was an alien who had absolutely no obligation to serve. No, but it concerns interpretation of the predecessor of 315, right? Is that right? Your Honor, there may have been some obiter dictum on that. The point of that case was that the alien had no obligation to serve whatsoever. He was not currently serving under the military. District court, I think, like you, couldn't find a case. So he relied on the Black Flaw dictionary meaning liability, right? Yes, Your Honor. That's the only authority he could cite to support his interpretation of what that term meant in Section 315. As far as I can tell, I have to agree with you. There's no case law that supports your position. Well, I think I don't have any case law. I could do more research. I think that I could find plenty of case laws saying that a soldier who was serving in the military, whether it's under an enlistment contract or induction or commission, has an obligation to serve. I can't walk away from the service just because it's a contract. That's not the question. You can't walk away. It's AWOL whether the soldier was enlisted or inducted or commissioned. Yes, but if he applies for discharge because he's an alien, he walks away. Well, but the alien can do that whether the alien's been enlisted, inducted, or inducted. Right. Now, the real issue is whether the citizenship bar has been applied only to involuntary servicemen. Let me ask you this. Under 329, you have a specific remedy that applies both to permanent and non-permanent residents of the United States who have entered the Army. And that means by the Army, I mean armed services. And that means that if they take an early quit because they're aliens, their citizenship application no longer is fast-tracked. Now, stay with me for a second. Right. It's no longer fast-tracked, but it doesn't mean it's barred. Isn't that inconsistent with your position? Your Honor, I have to beg the question. I don't think 329 – I don't think that provision says that at all. What it says is that if an alien serves during a designated period of hostility,   and unfortunately, Mr. Gagliardi enlisted about just a few months after the Gulf War. Otherwise, he would have been able to take advantage. That provision says that the alien is not barred if the alien can apply under 329. And unfortunately, Mr. Gagliardi cannot because he did not serve during a designated period of hostility. You say that applies only if he serves during a period of designated hostilities and that doesn't cover Gagliardi. Unfortunately. I just – one other thing I want to mention. I mean, the term alien is defined by statute at Section 1101 – 8 U.S.C. 1101a3, and it's simply anyone who's not a citizen or national of the United States. Alien is defined. I don't think we have any problem. Everybody agrees we're an alien and this man's an alien. Right. I think Your Honor's correct. If we were to find that service in the U.S. military counts as service for the NATO country, we'd have aliens from 15 countries that are listed in the regulation who could now, when the hostilities are getting rough, could say I've had enough, I'm exempting out, and there'd be no repercussions whatsoever, and that's exactly the situation Congress had in mind. If an alien decides when the going gets rough that he or she doesn't want to serve when obligated to do so, that there should be a bar to naturalization. And there's no issue but that Mr. Gagliardi can stay here in the United States as long as he wishes because he's a resident alien. No issue, although I hope he pursues the APA review. Well, that's a different issue. It's an exhaustion issue. If, of course, he were to marry the right kind of United States citizen, he might apply for it just. Well, he already has a residence. That's the problem. That's the problem. Thank you. Do I understand that there are currently 1,500 aliens who are serving in the military service? Did I get that from you? Not from me, Your Honor. I'm sure it's a lot more than that. I'm sure that it's a lot more than 1,500 aliens who are serving in the military right now. So if they could get out on alienage, they would, under similar circumstances, be eligible for citizenship. Yes, Your Honor. It wouldn't be every alien. It wouldn't be every alien. They'd have to be eligible for some exemption or under a mutual defense treaty. So it wouldn't be every alien.  All right. Thank you, Your Honors. Counsel, you've got a minute for rebuttal. Right. I'd like to supply a specific citation to the question about aliens being restricted to non-permanent residence. That's the agency's own interpretations, 315.3b2. 315.3b2? Right. Under the same memorandum, the internal memorandum, as amended November 15, 1951, in connection with the executive order so-and-so, the SS form, SSS form, Selective Service Form 130 procedure, was limited to an alien in the United States in a status other than that of a permanent resident. So the exemption was only available to persons who are not permanent residents. Secondly, with respect to Section 329, Section 329 does … Well, no. I mean, has he attempted to get back in the Navy? We actually had that discussion. The Navy will not take him back. I'm sure he's too old at this point. Well, yeah. You can understand why. Somebody who claims aliens for discharge is not going to be looked on as a person loyal serviceman. Certainly. And with respect to Your Honor's question about an alien getting naturalized under Section 329 and then wanting to get out immediately, procedures for revocation of naturalization fraudulently acquired if his intentions were not. Do you agree with counsel that 329 applies only if a person joined the armed service during periods of active hostilities and that that does not apply to Mr. Ghilardi? That's correct. And we must compare 329 to Section 328. Section 328 does not specifically by its terms prohibit the naturalization of aliens who were discharged on account of being an alien. Section 329 specifically states that. And if you're interested in ACFR 315.2b7, there's an exemption from the aliens thing for persons who qualify for naturalization under Section 329. But then if we go to Section 329, we see specifically in the statute, the statute, not the regulations, the statutes prohibit, specifically prohibit naturalization of individuals who got out on account of aliens. So we have the government going all over the place with respect to how do we interpret who's an alien, who's statutorily liable, who's contractually liable. And I'll just submit to Your Honors that the House report accompanying the Administrative Naturalization Law and Immigration Act of 1990 with respect to Section 315, the House report specifically stated that Section 315 has been haphazardly applied. And the House report recommended the repeal of Section 315. And the only thing Congress did at that time was to modify the treaty exemption so that an alien who gets out on the treaty exemption is not barred from naturalization. So we have people who are.  I have one last question. I don't understand your claim that 328 applies to this man. Yes. Is it your claim? He would. We did not. He did not apply under Section 328. But in reviewing the statute this week, he is eligible under Section 328. He's a permanent resident. The law used to require three years of honorable service. It was changed a couple of years. We're to only one year of honorable service. Discharge must be honorable throughout any period of military service. Section 329 specifically states that your service will not be considered honorable if you are discharged on account of alienage. And that's in the ACFR Section 329 interpreting that. 328, you say, applies. It would apply, and he would be eligible. So why do we have two military naturalization laws? One, which states in 328, nothing relative to a bar for alienage. And then the fast track one, as Your Honor pointed out, Section 329, a greater benefit. Congress said specifically, if you got out on alienage, we're not going to issue a barrier service. I've got to ask one question. Is it your position that your client, in his status, was not eligible to be discharged for alienism because he was an alien? Precisely. Okay. Thank you very much. It was a very interesting case and well presented. Thank you, Your Honor. I'd like to mark it as submitted. And the next case is the United States of America v. Chin Long Lee, which was submitted on the briefs.
judges: Bright, Tashima, Bea